UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JUAN SANTANA, Individually, and On
Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

LONGWORTH INDUSTRIES, INC.,
                    Defendant.

---------------------------------------------------------------x

Civil Action No.: 1:23-cv-1084(AMN/TWD)

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AND NEW YORK STATE HUMAN RIGHTS LAW

DEMAND FOR JURY TRIAL

Plaintiff Juan Santana ("Plaintiff"), by and through his attorney, brings this class action both on an individual basis, and on behalf of all others similarly situated, for declaratory relief, injunctive relief, and compensatory damages—including statutory and punitive damages—against defendant Longworth Industries, Inc. ("Defendant"), and alleges based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief, as follows:

**INTRODUCTION**

1.    This class-action lawsuit challenges the discriminatory actions of businesses that prevent those who are visually impaired or legally blind from equal enjoyment and access to websites, and the Internet generally.

2.    For sighted, blind, and visually impaired individuals, the Internet has become a significant source of information and entertainment, a tool for conducting business, and a means of accomplishing countless everyday activities such as shopping, banking, and learning. In today's tech-savvy, instantaneous world of online commerce, blind and visually impaired people must have the ability to access websites to enjoy the same convenience and savings allowed by online

shopping as sighted New Yorkers.  The primary means they do so is with screen reading software that vocalizes the visual information found on a computer screen.

3.    Defendant is an online retail company, who owns and/or operates proxgo.com ("Website" or "Defendant's Website").  Through the website, Defendant sells products, such as next-to-skin garments and accessories.

4.    Defendant and its Website violate the Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and New York State Civil Rights Law, § 40 *et seq.* and § 40-c *et seq.* ("NYSCRL"), as the Website is not equally accessible to blind and visually impaired consumers.

5.    Plaintiff brings this action on behalf of him and other similarly situated people who are blind and/or visually impaired, who wish to access the website in order to purchase the goods and products that Defendant sells there during the past three years from the date of the filing of the complaint (the "Class Period").

6.    Plaintiff and the proposed classes seek, *inter alia*, a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

## ADMINISTRATIVE PROCEDURES

7.    Prior to or concurrently with the initiation of this suit, Plaintiff served a notice of this action upon the attorney general, thereby satisfying the notice requirements of the New York Civil Rights Law.

8.    Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

9.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

10.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYSCRL claims.

11.     This is an action for declaratory and injunctive relief brought pursuant to the ADA, 42 U.S.C. § 12131 *et seq.*  This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. Defendant operates and distributes its products throughout the United States, including to consumers and others in this District.  Next-to-skin garments and accessories can be directly ordered from Defendant's website for delivery to locations in New York.  Plaintiff has been denied the full use and enjoyment of the goods offered on Defendant's website in this District.

## PARTIES

**<u>Plaintiff</u>**

13.     Plaintiff is a resident of Albany, New York.  Plaintiff a qualified person with a disability.  Plaintiff is a blind, visually impaired, handicapped person as defined under the ADA, and NYSCRL.  Plaintiff has experienced and continues to experience discrimination as a result of the website not being accessible to Plaintiff and other visually impaired people.

**<u>Defendant</u>**

14.     Upon information and belief, Defendant is a company formed under the laws of North Carolina and transacts business in New York through its Website.  Defendant owns and/or operates the Website, which is a place of public accommodation as defined under the ADA and NYSCRL.

## FACTUAL ALLEGATIONS

**Access to the Internet is integral to participate in current society**

15.     In recent decades, the Internet has quickly become an integral part of modern society.  Per a study by the MIT Technology Review published in 2018, the average American spends 23.6 hours of every week online.  According to studies cited by CNBC, as of 2018, Americans spent 234 million hours shopping online during the average workday.  Harvard Business Review studied the shopping behaviors of over 46,000 customers between 2015 and 2016 and it found that 73% of them shopped both online and in-store.  In 2018, NPR and the Marist Poll partnered up and surveyed 1,057 adults in the U.S., of those that shopped online, 88% of them liked shopping online because the convenience of being able to shop any time of the day and find products easily.

16.     The growing reliance of shopping online has been accelerated by the pandemic. According to Forbes, between 2019 and 2021, e-commerce sales grew 50.5%, while retail sales only grew 21.9% during that same period.

**Blind and/or visually impaired individuals can access the Internet, like sighted individuals, through screen-reading software**

17.     A 2021 study from the PEW Research Center found that 75% of all Americans with a disability report using the Internet every day.  People who are legally blind and/or visually impaired, like Plaintiff, made up a sizable portion of this population.  Studies show that between 12 and 14 million Americans are legally blind and/or visually impaired.  According to the American Foundation for the Blind, the 2019 Census identified an estimated 388,524 New Yorkers with serious sight impairment that cannot be remedied with corrective lenses.

18.     While Internet shopping is a convenience enjoyed by many, it can be particularly necessary for the visually impaired.  Without it, a visually impaired person who is shopping at a

physical retail location will often require help while shopping.  For instance, when visiting a retail store in order to buy a product, a visually impaired person must have someone else direct them to the appropriate aisle, describe the items available that may be of interest to the individual, tell them what size options of the products are available, read out the product's prices, direct the individual to the checkout area, *etc*.

19.    In contrast, a visually impaired person can navigate an accessible website without assistance.  They do so through screen reading software.  This software reads the text displayed on the computer screen by reading it aloud or converting the text to braille on a tactile refreshable braille display.  By repeating the visual information that appears on a computer screen (whether by voice narration or converting it into braille) in a way that it can be understood by the visually impaired individual, the screen reading software can "read" whatever is on a screen.  Visually impaired users can then navigate the information on their computer screen by using their keyboards or by other methods.[1]

20.    There are numerous types of screen readers available.  Screen readers are built to work with certain computer applications.  Examples of applications that screen readers can work with include, but are not limited to, web browsers (*i.e.*, Google Chrome, Firefox, and more), Microsoft Word, email applications, and music players.  Currently, one of the most popular screen readers available for PCs is the NonVisual Desktop Access ("NVDA").  It is free to download and is compatible with all popular web browsers.

---

[1]    Each screen reader has a set of commands that users can enter via the user's keyboard to navigate a computer screen's contents.  For instance, a user using the NonVisual Desktop Access screen reading software would press the "Insert" and "F7" keys to have the screen reader begin reading a website's headings. Pressing the "Ctrl" key would cause the screen reader to stop reading.

21.     In order for a screen reader to function properly when reading a website, the website itself must be coded to be compatible with the screen reader.  If a website is not properly coded, the screen-reader will not be able to relay information on the website to a blind and/or visually impaired consumer, that a sighted consumer can see.  For instance, an improperly coded website will not allow the screen reader to "read" the names of the products offered for sale on the website, the descriptions of those products, customer comments and ratings of those products, the sizes in which the products are offered, the prices of the products, promotional deals and online coupons, and many other product attributes and product information.

22.     Additionally, an improperly coded website may not notify a visually impaired shopper when a product has been added to their "cart," the number of items in their cart, or other information, and may not contain information directing the visually impaired individual as to where to input their shipping and payment information.

23.     Such deficiencies deprive visually impaired people of the ability to obtain important product information, make informed choices, and complete a purchase via the Internet.

**To be accessible, websites should be coded per the WCAG 2.1**

24.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG").  WCAG 2.1 is a set of well-established guidelines and criteria promulgated to ensure that websites are accessible to blind and visually impaired people.  Internationally, WCAG 2.1 is widely considered to set the standard for website accessibility.

25.     WCAG 2.1 contains accessibility guidelines that fall into three separate levels of accessibility—Level A, AA, and AAA—with Level A being the lowest and Level AAA being the highest.  Conformance at the higher levels indicates conformance at lower levels too (*i.e.*, a website

that conforms to Level AAA will also conform to Level AA and Level A criteria).   To be accessible, a website should conform to at least Level AA.[2]  When a website merely complies with Level A, the website will be very difficult, if not impossible, for many visually impaired users to access.   Of course, a website that does not even meet Level A compliance will be even less accessible to visually impaired individuals.

26.    Defendant's Website fails to even meet Level A compliance.

**Defendant's Website sells goods available for purchase and delivery to New York**

27.    Defendant is an online retail company that sells next-to-skin garments and accessories through its Website.  Defendant owns and/or operates the Website.

28.    Defendant is a "vertical manufacturer of high performance, moisture-wicking, anti-microbial next-to-skin garments and accessories in flame retardant and non-FR categories."

29.    Defendant delivers its products to New York and across the country.

30.    Defendant offers its website so that, *inter alia*, the general public can transact business on it.

31.    If Defendant's Website were equally accessible to all, blind and/or visually impaired individuals would be able to independently navigate the website and complete a desired transaction, as a sighted individual could do.

**Defendant has the financial means to make its website accessible to people who are blind or visually impaired**

32.    Upon information and belief, Defendant has invested substantial sums in developing its website and has generated significant revenue thereon.  Upon information and

---

[2]     For instance, the EU Web Accessibility Directive states that public sector bodies must make their websites abide by the WCAG 2.1 AA standard.

belief, the revenue procured by Defendant far exceed the associated cost of making the website equally accessible to visually impaired consumers.

### HARM TO THE INDVIDUAL PLAINTIFF

33.    Plaintiff is legally blind and/or visually impaired.

34.    On August 14, 2023, and August 19, 2023, Plaintiff browsed and attempted to transact business on Defendant's Website.  Plaintiff used the NVDA screen-reader when he tried to access the Website.

35.    Plaintiff went on the Website and shopped for the combat shirt to purchase for himself.

36.    The product is breathable, durable and designed for prolonged outdoor use.

37.     On each visit to Defendant's Website, Plaintiff found it difficult, if not impossible, for blind and/or visually impaired individuals, such as him, to purchase Defendant's next-to-skin garments and accessories, as a result of the access barriers that exist.  For example, the screen reader had the below problems due to the Website's accessibility issues:

a)   The Website is not properly coded to alert Plaintiff when a product has been added to the cart function.  This prevents Plaintiff from being able to complete his purchase. As Plaintiff is unable to ascertain when he is able to check out, Plaintiff is prevented from completing a purchase as a sighted New York customer would.

b)   When accessing the website, a pop-up appears which is not properly coded to allow the screen reader to read it. This delays Plaintiff's ability to navigate the website to make a purchase as a sighted New Yorker would.

c)   Defendant's website does not provide a text equivalent for many non-text elements, such as images on the webpage.  Plaintiff cannot see pictures, logos, or icons and

therefore an alternative text is read aloud using synthesized speech. Sighted individuals can see the image. Unfortunately, Defendant's website contains many images that lack alt-text, and therefore the screen reader cannot accurately vocalize descriptions of the images to Plaintiff. As a result, Plaintiff is unable to determine the details of products on the website and make purchases. This delays and impedes Plaintiff in making informed decisions about products to buy like a sighted individual would.

38.     As a result of the existence of these access barriers, Plaintiff was repeatedly denied full and equal access to Defendant's Website. These access barriers impede Plaintiff's ability to navigate the Website and complete a purchase. As a result of the access barriers, Plaintiff was repeatedly denied, on each of his visits, the opportunity to purchase and to obtain the full enjoyment of the combat shirt and the other next-to-skin garments and accessories.

39.     Plaintiff has actual knowledge of the access barriers that make Defendant's Website inaccessible and independently unusable by blind and visually impaired people. Given his experience on two occasions, Plaintiff knows that access barriers, such as those described above, exist on Defendant's website as of the date of the filing of this complaint.

40.     Plaintiff has been unable and remains unable to access the Website and complete his desired purchase. As a result, Plaintiff is deterred from returning to the Website to purchase the combat shirt for sale there.

41.     Plaintiff still wants to purchase the combat shirt, and he intends to do so once the access barriers are removed.

42.     Plaintiff remains expectant that the access barriers will be cured expeditiously. Once the barriers are cured, Plaintiff intends to return to the Website and purchase the combat shirt, in addition to potentially purchasing any other products that he was unable to learn about due

to the access barriers. As Defendant's Website is available through the Internet, and thus available around the clock from any Internet connected device, Plaintiff may easily return to the website and purchase the combat shirt once the barriers to accessibility are removed.

## CLASS ACTION ALLEGATIONS

**Class**

43.     The named Plaintiff brings this action for monetary damages and injunctive relief on their own behalf and, pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of all visually impaired and/or legally blind individuals in the United States, who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered by Defendant during the Class Period (the "Class").

44.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

45.     Upon information and belief, the people in the Class are so numerous that joinder of all such people is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court. *See* Fed. R. Civ. P. 23(a)(1). Indeed, a 2021 study from the PEW Research Center found that 75% of all Americans with a disability report using the Internet every day and as noted above, an estimated 388,524 New Yorkers are blind and/or visually impaired. Defendant sells its products, through its website, to customers in New York.

46.     Proposed members of the Class share a well-defined community of interest with respect to both questions of law and fact involved because they are all being discriminated against by being denied equal access, and will continue to be denied equal access to, the website. *See* Fed. R. Civ. P. 23(a)(2). For instance, whether Defendant's failure to make the Website accessible for all blind and/or visually impaired individuals in the state of New York constitutes a discriminatory

9

violation of the ADA is a question common to all members of the Class. Such common questions predominate over any questions affecting individual members of the Class.

47.     Plaintiff is an adequate class representative because he is directly impacted by Defendant's discrimination and failure to make the website accessible to people who are blind and/or visually impaired. Plaintiff's claims are likewise typical of the claims of the Class as a whole because Plaintiff is similarly affected by Defendant's discrimination and failure to ensure accessibility to the website. *See* Fed. R. Civ. P. 23(a)(3).

48.     The interests of Plaintiff are not antagonistic, or in conflict with, the interests of the Class as a whole. The attorneys representing the Class are highly trained, duly qualified, and very experienced with representing plaintiffs in civil rights class actions for damages and injunctive relief.

49.     By failing to make the website accessible to people who are blind and/or visually impaired, Defendant has acted and/or failed to act on grounds generally applicable to the Class as a whole. Plaintiff has similar legal bases for statutory and punitive damages that are sought on the behalf of members of the Class in this action. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

50.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments. Moreover, a class action will

allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

51.    Class members' identities can be identified by Defendant's records.  Plaintiff reserves the right to amend the definition of the Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

**NY Sub-Class**

52.    The named Plaintiff brings this action for monetary damages and injunctive relief on their own behalf and, pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of all visually impaired and/or legally blind individuals in the state of New York, who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered by Defendant during the Class Period (the "NY Sub-Class").

53.    Excluded from the NY Sub-Class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

54.    Upon information and belief, the people in the NY Sub-Class are so numerous that joinder of all such people is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.  *See* Fed. R. Civ. P. 23(a)(1).  Indeed, a 2021 study from the PEW Research Center found that 75% of all Americans with a disability report using the Internet every day and, as noted above, an estimated 388,524 New Yorkers are blind and/or visually impaired.  Defendant sells its products, through its website, to customers in New York.

55.    Proposed members of the NY Sub-Class share a well-defined community of interest with respect to both questions of law and fact involved because they are all being discriminated against by being denied equal access, and will continue to be denied equal access to, the website.

*See* Fed. R. Civ. P. 23(a)(2).  For instance, whether Defendant's failure to make the Website accessible for all blind and/or visually impaired individuals in the state of New York constitutes a discriminatory violation of the ADA is a question common to all members of the NY Sub-Class. Such common questions predominate over any questions affecting individual members of the NY Sub-Class.

56.    Plaintiff is an adequate class representative because he is directly impacted by Defendant's discrimination and failure to make the website accessible to people who are blind and/or visually impaired people.  Plaintiff's claims are likewise typical of the claims of the NY Sub-Class as a whole because Plaintiff is similarly affected by Defendant's discrimination and failure to ensure accessibility to the website.  *See* Fed. R. Civ. P. 23(a)(3).

57.    The interests of Plaintiff are not antagonistic, or in conflict with, the interests of the NY Sub-Class as a whole.  The attorneys representing the NY Sub-Class are highly trained, duly qualified, and very experienced with representing plaintiffs in civil rights class actions for damages and injunctive relief.

58.    By failing to make the website accessible to people who are blind and/or visually impaired, Defendant has acted and/or failed to act on grounds generally applicable to the NY Sub-Class as a whole.  Plaintiff has similar legal bases for statutory and punitive damages that are sought on the behalf of members of the NY Sub-Class in this action.  Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the NY Sub-Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the NY Sub-Class as a whole.

59.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this

controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments.  Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

60.    Class members' identities can be found in Defendant's records.  Plaintiff reserves the right to amend the definition of the NY Sub-Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

## COUNT I

Violations of Title III of the Americans with Disabilities Act
(42 U.S.C. § 12101 *et seq.*)

61.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

62.    The ADA provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

63.    The Website is a place of public accommodation within the meaning of the ADA. 42 U.S.C. § 12181(7).  The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

64.    Pursuant to the ADA, the term "disability" encompasses individuals with "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  The term "major life activity" includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking,

standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

65.    Plaintiff is a member of a protected class of persons who has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. § 12102(1)(A)-(2)(A).

66.    The ADA prohibits, among other things, activities such as denial of participation to an individual or class of individuals on a basis of a disability. *See* 42 U.S.C. § 12182(b)(1)(A)(i). The ADA defines "denial of participation" as a denial of individuals with disabilities the opportunity to participate in - or benefit from - the products, services, facilities, privileges, advantages, or accommodations of an entity. *See id.*

67.    The ADA prohibits, among other things, activities such as participation in unequal benefit. *See* 42 U.S.C. § 12182(b)(1)(A)(ii). The ADA defines "participation in unequal benefit" as the denial of an individual or class of individuals, on the basis of a disability, of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. *See id.*

68.    Plaintiff has been denied full and equal access to the website, has not been provided goods that are provided to other patrons who are not disabled, and has been provided goods that are inferior to the services provided to non-disabled persons.

69.    According to the ADA, "discrimination" includes, among other things:

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

70.    As the Website is currently coded, it is difficult, if not impossible, for blind and/or visually impaired individuals to navigate the Website or purchase Defendant's goods thereon, which are available to sighted individuals.

71.    By failing to operate a website that is readily accessible and usable to individuals because of their disability, when viewed in its entirety, Defendant have demonstrated a policy, practice, or procedure that has refused, withheld from, or denied Plaintiff and members of the proposed classes, each of whom qualify as a protected group under the provisions of the ADA, any of the accommodations, advantages, facilities, or privileges of the Website.

72.    Defendant's actions constitute discrimination against Plaintiff and the members of the proposed classes, on the basis of disability, in violation of the ADA, given that Defendant:

    a.    owned and operated a website that is inaccessible to blind and/or visually impaired individuals with knowledge of that discrimination; and/or

    b.    owned and operated a website that is inaccessible to blind and/or visually impaired individuals and should have reasonably known of that discrimination; and/or

    c.    failed to take steps that are necessary to ensure that no blind and/or visually impaired individuals were excluded or denied services of a website that was owned and operated by Defendant.

73.    Through the conduct described above, Defendant, in its role as the owner and/or operator of the Website, has discriminated against Plaintiffs and the proposed class members and has violated § 12182 of the ADA.

74.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

75.     As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff and members of the class have been injured, and continue to be injured.

76.     Thus, Plaintiffs are entitled to injunctive relief, damages, and reasonable attorneys' fees and costs.

77.     Wherefore, Plaintiff prays for relief as set forth below.

### COUNT II

Violations of the New York State Civil Rights Law
(Civil Rights Law § 40 *et seq.*)

78.      Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

79.     The New York State Civil Rights Law mandates that "all persons within the jurisdiction of [New York] shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations."  N.Y. Civ. Rights Law § 40.

80.     The Civil Rights Law provides that:

[n]o person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any [place or provider of public accommodation] shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof…

Civil Rights Law § 40.

81.     The Website is a place of public accommodation under Civil Rights Law § 40.

82.     Defendant is subject to the Civil Rights Law § 40 given that it owns and/or operates the Website.  Defendant is within the meaning of "the owner, lessee, proprietor, manager, superintendent, agent or employee of" a place of public accommodation.  Civil Rights Law § 40.

83.     Defendant has violated the section 40 of the Civil Rights Law by failing to remove access barriers from the Website, which make it difficult, if not impossible, for blind and/or

visually impaired individuals to navigate the Website or purchase Defendant's goods thereon, which are available to sighted individuals.

84.     Civil Rights Law § 41 states that "any corporation which shall violation any of the provisions of sections forty . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

85.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

86.     As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff and members of the class have been injured, and continue to be injured.

87.     Defendant discriminates and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly and indirectly refused, withheld from, or denied the accommodations, advantages, and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

88.     Defendant's conduct constitutes an ongoing and continuous violation of the Civil Rights Law.  Unless Defendant is enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  In particular, Plaintiff will suffer irreparable harm in that Plaintiff and members of the proposed classes will continue to be discriminated against and denied the accommodations, advantages, facilities, or privileges of the website, as well as accommodations that would provide them the opportunity to benefit from it.

89.     Wherefore, Plaintiff prays for relief as set forth below.

### COUNT III

Violations of the New York State Civil Rights Law
(Civil Rights Law § 40-c *et seq.*)

90.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

91.     The New York State Civil Rights Law mandates that "all persons within the jurisdiction of [New York] shall be entitled to the equal protection of the laws of [New York] or any subdivision thereof."  N.Y. Civ. Rights Law § 40.

92.     Under Civil Rights Law § 40-c(2), "[n]o person shall, because of . . . disability, as such a term is defined in section [292] of the executive law, be subject to any discrimination in his or her civil rights . . . in the exercise thereof, by any other person, or by any firm, corporation or institution…"

93.     Plaintiff and members of the class are persons with disabilities within the meaning of the N.Y. Exec. Law § 292(21)(a).

94.     Defendant is within the meaning of "any other person, or . . . any firm, corporation or institution."  Civil Rights Law § 40-c(2).

95.     Defendant has violated the section 40-c(2) of the Civil Rights Law by failing to remove access barriers from the Website, which make it difficult, if not impossible, for blind and/or visually impaired individuals to navigate the Website or purchase Defendant's goods thereon, which are available to sighted individuals.  As such, Defendant has subjected Plaintiff to discrimination under Civil Rights Law § 40-c(2).

96.     Defendant failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

97.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the classes have been injured, and continue to be injured.

98.    Defendant discriminates and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly and indirectly refused, withheld from, or denied the accommodations, advantages, and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

99.    Defendant's conduct constitutes an ongoing and continuous violation of the Civil Rights Law.  Unless Defendant is enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  In particular, Plaintiff will suffer harm due to the continuous denial of the accommodations, advantages, facilities, or privileges of the website, as well as accommodations that would provide Plaintiff the opportunity to benefit from it.

100.    Wherefore, Plaintiff prays for relief as set forth below.

## COUNT IV

### Declaratory Relief

101.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

102.    Plaintiff contends that Defendant have failed and are failing to comply with applicable laws prohibiting discrimination against people who are blind and/or visually impaired affecting Plaintiff's ability to use the Website, in violation of ADA, Civil Rights Law § 40 *et seq.*, and Civil Rights Law § 40-c *et seq.*

103.    Defendant disagrees with Plaintiff's contention.

104.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on him own behalf and on behalf of the class, demands a judgment as follows:

a.      awarding statutory money damages (including, but not limited to, $500 for each violation pursuant to NYSCRL § 41), actual damages and punitive damages, including pre-judgment and post-judgment interest;

b.      granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the ADA and NYSCRL;

c.      providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually-impaired;

d.      certifying the Class and the NY Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as class representative, and Plaintiff's attorneys as class counsel;

e.      awarding attorneys' fees and costs, and other relief; and

f.      awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 25, 2023                          **MIZRAHI KROUB LLP**

 

 

_____

                                EDWARD Y. KROUB

EDWARD Y. KROUB
225 Broadway, 39th Floor
New York, NY 10007
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com

*Attorneys for Plaintiff*